# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00711-CV

**Calab, Inc.; Mosaic, Inc.; Mosaic Martin Luther Homes, Inc.; The Center Serving Persons with Mental Retardation; Unified Care Group; and Mosaic of Bethphage, Appellants**

**v.**

**Texas Department of Aging and Disability Services, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. D-1-GN-16-003653, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants Caleb, Inc.; Mosaic, Inc.; Mosaic Martin Luther Homes, Inc.; The Center Serving Persons with Mental Retardation; Unified Care Group; and Mosaic of Bethphage (the Providers) appeal from the trial court's agreed final judgment granting their bill of review and affirming the final orders of appellee Texas Department of Aging and Disability Services (the Department).[1]  In its orders, the Department found that the Providers were liable for underpaying quality assurance fees (QAF) for the time period September 1, 2004, to December 31, 2007, following the Department's after-the-fact recalculation of the QAF that each Provider owed for that time period.  *See* Tex. Health & Safety Code § 252.202 (addressing computation of QAF).  For the

---

[1] In 2017, the Texas Department of Aging and Disability Services ceased to be a state agency after the transfer of its operations to the Texas Health and Human Services Commission (the Commission) was completed.  We, however, refer to appellee as the Department to be consistent with the parties' briefing.

following reasons, we reverse the trial court's final judgment and the Department's final orders and remand the administrative cases to the Department.[2]

## Background

The Providers contract with the Department to provide services to qualified individuals pursuant to respective Medicaid provider agreements,[3] and they are required to pay QAF. *See id.*; 1 Tex. Admin. Code §§ 352.1–.9 (2003) (Tex. Health & Human Servs. Comm'n, Quality Assurance Fee for Long-Term Care Facilities).[4] The Department also is under contract with the Centers for Medicare and Medicaid Services (CMS), which provides federal funding for the provision of services to qualified individuals. The parties' dispute concerns the Department's change in practice concerning amounts of underpaid QAF by a facility following six-month reviews during the 2004–2007 time period. *See* 1 Tex. Admin. Code § 352.3(c); *see also* Tex. Health & Safety Code § 252.202(c). Prior to applicable rules being amended in 2008, the Department's

---

[2] This appeal was consolidated with this Court's cause number 03-17-00712-CV for purposes of briefing and consideration. By opinion issued this same date, we reverse the trial court's order and the Department's final orders in that case and remand the administrative cases to the Department.

[3] Among the terms in their respective agreements with the Department, appellants agreed to "[a]llow the Department to adjust payments made to [them], without notice, for prior overpayment or underpayment," and they agreed to "[c]omply with applicable state laws and rules" and "applicable federal laws and regulations." Although the Department relied on these provisions at the administrative level to support its position, the Department has not done so on appeal. We limit our analysis to the arguments raised by the parties. *See* Tex. R. App. P. 38.1(i), 38.2(a)(1).

[4] Unless otherwise stated, citations to the Commission's rules are to the version of the rules as they existed prior to their amendment in 2008. The current version of the rules is found in sections 11.2 to 11.9 of title 40 of the Texas Administrative Code. *See* 40 Tex. Admin. Code §§ 11.2–.9 (Dep't of Aging & Disability Servs., Quality Assurance Fee).

2

practice was not to assess additional QAF from a facility to equal six percent of the facilities' gross receipts based on a six-month review but to issue a refund to a facility if the six-month review showed that the facility had overpaid its QAF above the six-percent measure for that particular six-month period.

Following a financial management review of the QAF program, the CMS in 2009 determined that the Commission had not been performing a proper reconciliation process, resulting in facilities, including the Providers, underpaying amounts due to the State for the 2004–2007 time period.[5] Specifically, the CMS determined that some facilities had not been paying amounts equal to six percent of gross receipts and that this practice violated the uniformity requirement in section 1903(w) of the Social Security Act. *See* 42 U.S.C. § 1396b(w) (requiring states to impose health care related taxes uniformly). The CMS requested that the Commission recalculate the QAF that facilities owed to the State so that the total amount paid per facility equaled six percent of the particular facility's gross receipts for the 2004–2007 time period and then collect underpayments based on the recalculation. The CMS further warned the Commission that "[f]ailure to collect these underpayments may render the entire tax impermissible."

---

[5] In the final report, CMS explained how the Commission was not performing a proper reconciliation process:

> [The Commission] was submitting refunds for overpayments of QAF but not requiring underpayments to be paid to [the Department] upon reconciliation. Therefore, some of the facilities were delaying the submissions of Medicaid claims in order to lower gross receipts for the six month reconciliation period and thus, pay a lower QAF amount.

In response to the CMS's request, the Department recalculated the QAF owed per facility for the 2004–2007 time period and then sought to collect underpayments, including seeking collection from the Providers for underpayments as to their facilities from that time period. Disputing their liability for the underpayments, the Providers sought informal reviews and then administratively appealed the results of the informal reviews. For purposes of this appeal, the Providers' administrative records are substantively the same, except as to the amount that the Department sought to collect from each Provider. It is undisputed that the Providers made payments in accordance with the Department's instructions during the 2004–2007 time period but that they had underpaid their respective QAF below the six-percent measure based on the three-year recalculation. The Providers also did not present evidence to controvert the Department's evidence of their gross receipts and corresponding underpayments for the three-year period. The Providers contended that they were not liable for the underpayments based on: (i) the Department's practice during the 2004–2007 time period not to collect underpayments following six-month reviews; (ii) their compliance with the Department's instructions during that time period as to assessed QAF; and (iii) the applicable rules that, according to the Providers, did not authorize collection of underpayments.

The Providers' administrative appeals were denied by summary disposition. In their proposals for decision, the administrative law judges determined that the Commission had not followed its own rules when it did not collect underpayments from the Providers during the 2004–2007 time period, that the Department had mischaracterized the QAF rules in effect during that

4

time period, and that the Providers remained liable for underpayments. For example, in the second amended proposal for decision as to appellant Mosaic, the ALJ's conclusions of law included:

- 1 Texas Administrative Code Section 352.3 in effect from September 1, 2004, through December 31, 2007, required ICF/MR providers to pay a QAF equal to 6% of reimbursements for residents, up to a total of 6% of annual gross revenues of the facility.

- [The Commission]'s failure to collect the full QAF that was payable under its rules did not excuse Appellant from its obligation to pay the full amount due it owed pursuant to those rules.

- Because there is no genuine issue of material fact regarding Appellant's total gross receipts during from [sic] September 1, 2004, through December 31, 2007, [the Department] is entitled to collect all underpayments of Appellant's QAF up to a total of 6% of said gross receipts.

In the analysis section, the ALJ explained that "the rules in effect during the period in question created an obligation on [the Provider] to pay a total of 6% of its gross receipts" and that the Provider's "obligation was not obviated by [the Commission]'s inability to devise a scheme to collect said receipts or [the Department]'s erroneous portrayal of the rule that created the obligation." The proposals for decision in the administrative appeals by the other Providers were substantively the same. The Department adopted the proposals for decision, reaffirmed the amounts of underpayment as to each Provider, and issued final orders that it was entitled to collect all underpayments as to each Provider "up to a total of six percent of said gross receipts" for the 2004–2007 time period.

The Providers filed a consolidated suit for judicial review, but it was dismissed for want of prosecution. In 2016, they filed an original petition for bill of review seeking to set aside

5

the order dismissing their suit for judicial review. The parties entered into a rule 11 agreement in which they agreed that the Providers' bill of review had merit and should be granted. They also stipulated that the issues were the same as the underlying proceeding addressed in this Court's cause number 03-17-00712-CV and that the arguments and analysis in that proceeding were applicable to their cases. The trial court thereafter signed an agreed final judgment reflecting the parties' rule 11 agreement. The trial court granted the Providers' bill of review, affirmed the agency orders of the Department as to each Provider, and stated that they had the right to appeal the judgment. This appeal followed.

**Analysis**

The Providers raise the same two issues on appeal as are raised by the appellants in this Court's cause number 03-17-00712-CV. They argue that the Department "is not now authorized to re-interpret the law to collect additional QAF taxes based upon the 2003 law that was settled and in effect during the relevant time period" and that the trial court "committed error by retroactively applying the law that came into effect in 2008, which was after the relevant time period for calculation of the additional QAF taxes at issue."

Based on the analysis and conclusions in our opinion issued this same date in cause number 03-17-00712-CV, we sustain the Providers' first issue in this case. Given the applicable statutes and rules, we conclude that the Department's final orders adopting the proposals for decision and affirming the Providers' liability for underpayments for the 2004–2007 time period were arbitrary and capricious and affected by errors of law that prejudiced the substantial rights of the

6

Providers. *See* Tex. Gov't Code § 2001.174(2)(D), (F); Tex. Health & Safety Code §§ 252.204, .205; 1 Tex. Admin. Code §§ 352.3, 352.6.

Because our resolution of the Providers' first issue is dispositive as to this appeal, we do not address their second issue in which they contend that the trial court erred by retroactively applying the 2008 amendments to the rules.

## Conclusion

For these reasons, we reverse the trial court's final judgment and the Department's final orders and remand the administrative cases to the Department for further proceedings.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Reversed and Remanded

Filed:   November 7, 2018